# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     **Plaintiff,**

**v.**                                    **No.**    **04-cr-1308 RB**
                                                  **16-cv-0545 RB/SMV**

**CARLOS PEREZ,**

     **Defendant.**

## MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before me on Defendant Carlos Perez's Second Petition to Correct His Illegal Sentence Pursuant to 28 U.S.C. § 2255 [CR Doc. 55; CV Doc. 1], filed on June 9, 2016. The government responded on August 4, 2016. [CR Doc. 62; CV Doc. 8]. Mr. Perez replied on August 9, 2016. [CR Doc. 63; CV Doc. 9]. Having considered the briefing, the relevant portions of the underlying criminal record, the relevant authorities, and being otherwise fully advised in the premises, I find that Mr. Perez's underlying conviction for violating NMSA 1978 § 30-16-3(A) qualifies as a crime of violence under the "enumerated clause" (and not the "residual clause") of U.S. Sentencing Guidelines Manual ("Guidelines" or "Sentencing Guidelines") § 4B1.2(a) (2004). Therefore, his argument that the residual clause is unconstitutionally vague under *Johnson v. United States* need not be decided. Even if the residual clause were unconstitutional, a matter that I decline to decide, Mr. Perez would still not be entitled to re-sentencing. His Motion should be denied.

## **Background**

Mr. Perez was charged with six counts of possession and distribution of methamphetamine and marijuana and one count of being a felon in possession of a firearm. *See* [CR Doc. 22] at 2. He entered into a plea agreement with the United States on November 17, 2004. [CR Doc. 22] at 9. He agreed to plead guilty to six counts of the seven-count indictment. *Id.* at 2. In exchange, the government agreed to dismiss Count 7 and not to bring any additional charges. *Id.* at 7–8. Further, the government stipulated that he should receive a reduction of three levels for acceptance of responsibility and an enhancement of two levels for possessing a firearm, and that he be sentenced at the low end of the guideline range. *Id.* at 6.

Apparently, however, on receiving the Presentence Report ("PSR"), the parties were surprised to learn that Mr. Perez was classified as a career offender and, thus, was facing more time than the attorneys had anticipated. Transcript of Sentencing dated Jan. 4, 2006, at 2–4, attached hereto as Exhibit 1. It is unclear how much time the attorneys had contemplated, but it was obviously lower than the range described in the PSR, which was 262–327 months. *Id.*; PSR at 18. In order to "mitigate that a little bit," the prosecutor not only moved to dismiss Count 7 (as per the plea agreement), but she additionally moved to dismiss Count 4. *Id.* at 2–3. She explained that she was moving to dismiss Count 4 (even though it was not part of the plea agreement) in order to reduce the guideline range. Dismissing Count 4 lowered Mr. Perez's total offense level from 34 to 31 and, consequently, lowered his guideline range from 262–327 months to 188–235 months. *Id.* at 3; PSR at 18.

2

The Honorable Robert C. Brack, United States District Judge, the sentencing judge, agreed with the attorneys' plan.  *See* Transcript of Sentencing dated Jan. 4, 2006, at 26–28.  He allowed the prosecutor to dismiss both Counts 4 and 7.   [CR Doc. 27].   He found that Mr. Perez's total offense level was 31 and his criminal history category was VI.   Transcript of Sentencing dated Jan. 4, 2006, at 27.   He found that the guideline imprisonment range was 188−235 months.  Ultimately, Judge Brack sentenced Mr. Perez to 188 months.  *Id.* at 27–28.

About four years later, on April 31, 2010, Mr. Perez filed his first motion to reduce his sentence, alleging that his retained attorney, Gary Mitchell, had provided constitutionally ineffective assistance.  [CR Doc. 31] at 7–13.  He argued that Mr. Mitchell should have objected to the determination in the PSR that he was a career offender.  *Id.*  Judge Brack denied the motion as not cognizable under Fed. R. Crim. P. 60(b) and as untimely under § 2255. [CR Doc. 33].

Later, in 2015, Mr. Perez filed another motion seeking a reduction in his sentence. [CR Doc. 41].  He argued that he was entitled to a reduction under 18 U.S.C. § 3582 because the U.S. Sentencing Commission had promulgated a retroactive amendment (Amendment 782 to § 2D1.1 of the United States Sentencing Guidelines) that should benefit him.  *Id.*  Again, Judge Brack was not persuaded, and he denied the motion.  [CR Doc. 42].  Mr. Perez appealed, but the Tenth Circuit Court of Appeals agreed with Judge Brack.  [CR Doc. 51-1].

Mr. Perez subsequently requested permission from the Tenth Circuit Court of Appeals to file a second motion under § 2255 to correct his sentence. The court granted permission on May 24, 2016.  [CR Doc. 54].

## **I will presume that the error alleged actually prejudiced Mr. Perez.**

Even if all of Mr. Perez's arguments were meritorious, I am not convinced that the error he alleges actually prejudiced him.  Without the career offender enhancement that he challenges, his criminal history category would have been IV, and his total offense level would have been 31, yielding a Guidelines sentencing range between 151–188 months.[1]   [CR Doc. 51-1] at 3.  With the career offender enhancement that he challenges, his criminal history category was VI, his total offense level was 34, and the Guidelines sentencing range was 262–327 months.  PSR at 18.   However, when the prosecutor moved to dismiss Count 4 (even though the Plea Agreement contemplated dismissal of only Count 7), Mr. Perez's total offense level dropped to 31, and though his criminal history category remained at VI, his Guidelines sentencing range dropped to 188–235 months.  Transcript of Sentencing dated Jan. 4, 2006, at 27.

The point being two-fold:  First, absent the prosecutor's dismissal of Count 4, which she was under no obligation to do, Mr. Perez faced a Guidelines range of 262–327 months.  However, he was sentenced to 188 months—74 months below the bottom end of the range.  Second, Mr. Perez's ultimate sentence of 188 months was within the Guidelines range that he advocates.  That is, even without the career offender enhancement, the Guidelines range was 151–188 months.  *See* [CR Doc. 51-1] at 3 (Order and Judgment from Tenth Circuit Court of Appeals affirming Judge Brack's denial of Mr. Perez's § 3582 motion, in which the court found that "but for [Mr. Perez's] career offender status[, his] Guidelines sentencing range would have

---

[1] Mr. Perez's motion mentions a Guidelines range of 121–151 months, [Doc. 1] at 3 n.1, but that range is a bit misleading in this context.  That range is calculated "under the *current* sentencing guidelines," *id.*, which of course, is not relevant to Plaintiff's argument here.  The relevant ranges here are the range that he faced at sentencing and the range that he believes he should have faced at sentencing.

been 151 to 188 months"). Mr. Perez was sentenced within that range. The range that he insists

he should have faced includes the sentence imposed. Even if all of Mr. Perez's arguments were

meritorious, it is hard to see how he was prejudiced. Nevertheless, I will presume that he was

prejudiced and proceed to the merits. *See Molina-Martinez v. United States*, 136 S. Ct. 1338,

1345 (2016) (holding that, on direct appeal, prejudice is presumed when a defendant is sentenced

under an incorrect guideline range even though his ultimate sentence falls within the correct

range).

### Motions under § 2255 and *Johnson v. United States*

Pursuant to 28 U.S.C. § 2255(a), a "prisoner in custody" pursuant to a federal conviction

may "move the court" "to vacate, set aside or correct the sentence" if it "was imposed in

violation of the Constitution or laws of the United States."

In *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015), the Supreme Court held that

the so-called residual clause of the definition of "violent felony" in the Armed Career Criminal

Act ("ACCA") was unconstitutionally vague. The ACCA defined "violent felony" as follows:

> any crime punishable by imprisonment for a term exceeding one
> year . . . that —
> (i) has as an element the use, attempted use, or threatened use of
> physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, *or
> otherwise involves conduct that presents a serious potential risk of
> physical injury to another*.

18 U.S.C. § 924(e)(2)(B) (emphasis added). The closing words of this definition, italicized

above, have come to be known as the "residual clause."

The Court explained that the residual clause left "grave uncertainty" about "deciding what kind of conduct the 'ordinary case' of a crime involves."  *Id.*  That is, the residual clause "denie[d] fair notice to defendants and invite[d] arbitrary enforcement by judges" because it "tie[d] the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements."  *Id.*  Second, ACCA's residual clause left "uncertainty about how much risk it takes for a crime to qualify as a violent felony."  *Id.* at 2558.  By combining these two indeterminate inquiries, the Court held, "the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates."  *Id.*  On that ground it held the residual clause void for vagueness.  *Id.*

Soon thereafter, the Court determined that the ruling in *Johnson* was substantive (as opposed to procedural) and, therefore, had "retroactive effect in cases on collateral review."  *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016).  Accordingly, *Welch* opened the door for individuals sentenced under the residual clause of the ACCA's violent-felony definition to move to vacate their sentences as unconstitutional under § 2255.

Mr. Perez's motion, however, is different.  He was not sentenced under the ACCA, nor does he claim that he was.  Instead, he argues that he was sentenced under § 4B1.1 of the Sentencing Guidelines.  This section is known as the career offender guideline.  Like the ACCA, the career offender guideline prescribes stiffer sentences for individuals with convictions for "crimes of violence."  Also, like the ACCA, the Guidelines' definition for "crime of violence" includes a residual clause.

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that —
>
>> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>>
>> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

§ 4B1.2(a) (2004).[2]   The closing words of this definition, italicized above, have come to be known as the "residual clause" of the career offender guideline's definition of "crime of violence."

Mr. Perez reasons that because the residual clause in the career offender guideline mirrors the residual clause in the ACCA, the Supreme Court's holding in *Johnson* (that the ACCA's residual clause is unconstitutionally vague) should apply equally to the residual clause in the career offender guideline.   In other words, Mr. Perez asks the Court to extend *Johnson* beyond the ACCA to the career offender guideline.[3]   There is some support for his position.

The Tenth Circuit applied *Johnson* outside of the context of ACCA and invalidated the residual clause of the career offender guideline in *United States v. Madrid*, 805 F.3d 1204, 1210 (10th Cir. 2015).   However, *Madrid* was not a collateral attack on a sentence; it was a direct

---

[2] Mr. Perez's briefing refers to the 2004 edition of the Guidelines.   [Doc. 1] at 4.   His PSR expressly applied the 2004 edition.   PSR at 7, ¶ 13.   The government does not argue that a different edition is relevant.   *See* [Doc. 8]. Accordingly, I review the 2004 edition.

[3] Mr. Perez did not raise this issue on direct appeal.   Generally, claims that were not raised on direct appeal are procedurally defaulted and cannot be raised in a § 2255 motion unless the defendant can show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed.   *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994).   However, the government did not raise procedural default as a defense, and I decline to address it sua sponte.   *See Hines v. United States*, 971 F.2d 506, 509 (10th Cir. 1992) (holding that, in a § 2255 motion, the district court may raise procedural default sua sponte); *but see Gray v. Netherland*, 518 U.S. 152, 165−66 (1996) (commenting that, in a § 2254 petition, procedural default is waived if not raised by the government).

appeal.  This distinction matters because, in order to rely on *Madrid* for the instant motion under § 2255, Mr. Perez must show that the rule in *Madrid* is retroactive.  There is no *Welch* corollary expressly holding that *Madrid* is or is not retroactive, and it is no surprise that the parties dispute whether *Madrid* should apply retroactively.  *Compare* [Doc. 1] at 15,[4] *with* [Doc. 8] at 6–12.

These issues—whether *Johnson* should be extended to the career offender guideline, and if so, whether such ruling should apply retroactively—are currently before the Supreme Court in *Beckles v. United States* (S. Ct. No. 15-8544).  Here, the United States moved to stay Mr. Perez's § 2255 motion pending the Court's ruling in *Beckles*.  [Doc. 5].  Mr. Perez opposed the stay because he expects to be released before *Beckles* is decided.  [Doc. 6] at 3.  He contends that a stay will prejudice him because, if this Court is persuaded by his motion and resentences him, he will likely be eligible for immediate release.  *See id.*  The United States does not dispute that a stay would prejudice Mr. Perez.  [Doc. 7].  In an order filed concurrently herewith, I denied the motion to stay for two reasons.  First, a stay would prejudice Mr. Perez.  Second, I find that regardless of how the Court rules in *Beckles*, Mr. Perez is not entitled to resentencing because he was not sentenced under the residual clause of the career offender guideline; he was sentenced under the enumerated clause.  *See* § 4B1.2(a).

<u>**Mr. Perez's conviction for New Mexico residential burglary
qualifies as an enumerated "crime of violence."**</u>

Mr. Perez was deemed to be a career offender based on two prior convictions in New Mexico:  one in 2000 for residential burglary, NMSA 1978 § 30-16-3(A), and one in 2002

---

[4] Unless specifically noted otherwise, citations to document numbers refer to the docket in the civil case, which is case number 16-cv-0545 RB/SMV.

8

for distribution of a controlled substance, NMSA 1978 § 30-31-22.  PSR at 8; [Doc. 1] at 4.

There is no dispute that the controlled substance conviction is a qualifying conviction under the

career offender guideline.  [Doc. 1] at 4.  The dispute here concerns the residential burglary

conviction.  *Id.*

Mr. Perez argues that his residential burglary conviction could have qualified as a crime

of violence (and, thus, counted toward his career offender designation) *only* under the residual

clause.  Further, he argues that based on the logic in *Johnson*, this Court should find the residual

clause unconstitutionally vague and resentence him.  The United States argues that the residential

burglary conviction qualified as a crime of violence under the so-called enumerated clause ("The

term 'crime of violence' means any offense . . . that . . . (2) is burglary of a dwelling, arson, or

extortion, [or] involves use of explosives[.]"  § 4B1.2(a)).[5]  Therefore, the United States argues

that the rationale in *Johnson* does not apply to this case.  In other words, irrespective of *Johnson*

and the ultimate outcome in *Beckles*, the United States argues that Mr. Perez should not be

resentenced because he was not sentenced under the residual clause in the first place.  I agree

with the United States.

Mr. Perez's conviction under § 30-16-3(A) is substantially similar to the generic

definition of "burglary of a dwelling."  Therefore, his conviction under § 30-16-3(A) qualifies as

a crime of violence under the "enumerated clause" (and not the "residual clause") of Guidelines

§ 4B1.2(a).  He is not entitled to resentencing.

---

[5] Neither party argues that the residential burglary conviction falls under the so-called "elements" (or "force") clause (to wit:  "The term 'crime of violence' means any offense . . . that—(1) has as an element the use, attempted use, or threatened use of physical force against the person of another[.]"  § 4B1.2(a)).  *See* [Doc. 1] at 4–5; [Doc. 8] at 13–21.

The definition and scope of the offenses enumerated in the career offender guideline's definition of "crime of violence" are questions of federal law.  *See United States v. Rivera-Oros*, 590 F.3d 1123, 1126 (10th Cir. 2009) (analyzing the "crime of violence" definition in a guideline applicable to unlawfully entering or remaining in the United States).  To define the generic crime of "burglary of a dwelling" as listed in the Guidelines, courts look for indicia of the Sentencing Commission's intent in listing "burglary of a dwelling" as an enumerated "crime of violence." *Rivera-Oros*, 590 F.3d at 1129.   Evidence of the Commission's intent may be found, for example, in previous judicial decisions interpreting the Guidelines, the Model Penal Code, or even Black's Law Dictionary. *See id.* at 1131–32.

The label that a state attaches to a crime under its laws does not determine whether it is a Guidelines enumerated offense. *Id.* (citing *United States v. Servin-Acosta*, 534 F.3d 1362, 1366 (10th Cir. 2008) ("[W]e have rejected the notion that whether a state conviction was for an enumerated but undefined crime 'depends upon how the crime is characterized under state law.'").   Instead, the enumerated offenses of § 4B1.2(a) are defined by their "generic, contemporary meaning."   *Rivera-Oros*, 590 F.3d at 1126 (citing *Taylor v. United States*, 495 U.S. 575, 598 (1990)).  For purposes of the instant motion, the parties agree that the "generic, contemporary meaning" (or the "generic definition") of the guideline offense of "burglary of a dwelling" is burglary of any "enclosed space that is used or intended for use as a human habitation."  [Doc. 1] at 5 (citing *Rivera-Oros*, 590 F.3d at 1132[6]); [Doc. 8] at 14.

---

[6] *Rivera-Oros* actually dealt with the generic offense of burglary of a dwelling that is listed in § 2L1.2 of the guidelines.  590 F.3d at 1127.  That offense is the same as the offense described in the career offender guidelines. *See United States v. Ramirez*, 708 F.3d 295, 302 (1st Cir. 2013) (treating cases defining "burglary of a dwelling" under both § 2L1.2 and § 4B1.2 interchangeably).

Mr. Perez was convicted of burglary under New Mexico's residential burglary statute. Of course, the fact that attorneys often refer to the statute as "residential burglary" is wholly irrelevant to the analysis at hand. Rather, in determining whether a previous conviction satisfies the generic meaning of the offense, courts apply "a formal categorical approach, looking only to the statutory definitions of the prior offense[], and not to the particular facts underlying th[e] conviction[]." *Rivera-Oros*, 590 F.3d at 1127 (citing *Taylor*, 495 U.S. at 600). "A state statute does not need to match the generic definition verbatim. The Guideline enhancement applies so long as the statute 'corresponds in substance to the generic meaning.'" *Id.* at 1133 (quoting *Taylor*, 495 U.S. at 599). "[T]o find that a state statute creates a crime outside the generic definition . . . requires more than the application of legal imagination . . . . It requires a *realistic probability*, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Id.* (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

For example, the Tenth Circuit Court of Appeals has held that certain burglary statutes in California and New Jersey did not constitute "burglary of a dwelling" because those statutes included non-dwellings, such as businesses. *United States v. Smith*, 10 F.3d 724, 733 (10th Cir. 1993) (California statutory definition included non-dwellings such as "shop[s], warehouse[s], store[s], mill[s], [and] barn[s]."); *United States v. Forsythe*, 437 F.3d 960 (10th Cir. 2005) (New Jersey burglary statute applied to "any place adapted for overnight accommodation of persons, *or* for carrying on business therein").

11

Similarly, the court held that Oklahoma's second degree burglary statute was "obviously overbroad" because it included any "structure or erection, in which any property is kept." *United States v. Bennett*, 108 F.3d 1315, 1317 (10th Cir. 1997).   Although it is not binding, Judge Phillips analyzed Texas's burglary-of-a-habitation statute in a dissent and found that it was broader than the generic definition of "burglary of a dwelling" for two reasons. *Armendariz-Perez*, 543 F. App'x 876, 884 (10th Cir 2013) (Phillips, J., dissenting).   First, he found that the Texas statute included structures that were not used or intended for use as a human habitation, such as sheds, unattached garages, and other appurtenant structures.   *Id.*   Second, he found that Texas's definition of "habitation" was not limited to "enclosed" spaces (because Texas reserved the term "building" to refer to spaces that were enclosed).   *Id.*

Conversely, the Tenth Circuit found that Oklahoma's first degree burglary statute and Arizona's second degree burglary statute did meet the generic definition of "burglary of a dwelling."   *Bennett*, 108 F.3d at 1317 (analyzing the Oklahoma statute); *Rivera-Oros*, 590 F.3d at 1135 (analyzing the Arizona statute).   The Oklahoma first degree burglary statute required "'break[ing] into and enter[ing] the dwelling house of another, in which there is at the time some human being'" and, therefore, was "burglary of a dwelling" under the Guidelines.   *Bennett*, 108 F.3d at 1317 (quoting Okla. Stat. tit. 21, § 1431).

In *Rivera-Oros*, the Tenth Circuit Court of Appeals held that the generic definition of "burglary of a dwelling" did not require the dwelling to be permanent and immovable.   Thus, it rejected the defendant's argument that the Arizona statute was too broad for covering movable structures such as boats and tents.   590 F.3d at 1127–28.   The Arizona statute distinguished

12

between residential and commercial structures, and the defendant's statute of conviction covered only residential structures, not commercial ones.  *Id.* at 1133–34.  The court held that "'burglary of a dwelling' [was] not limited to permanent and immovable structures or buildings.  Rather, a 'dwelling' includes any enclosed space that is used or intended for use as a human habitation." *Id.* at 1132.  Accordingly, the Arizona statute of conviction matched the generic definition for "burglary of a dwelling," and Arizona's second degree burglary statute satisfied the enumerated clause of the definition of crime of violence.  *Id.*

As mentioned above, the parties in this case agree that the generic definition of the guideline offense of burglary of a dwelling is found in *Rivera-Oros*:  the burglary of any "enclosed space that is used or intended for use as a human habitation."  [Doc. 1] at 5 (citing *Rivera-Oros*, 590 F.3d at 1132); [Doc. 8] at 14).  Mr. Perez's statute of conviction reads:

> **Burglary.**
>
> Burglary consists of the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, with the intent to commit any felony or theft therein.
>
> **A.** Any person who, without authorization, enters a dwelling house with intent to commit any felony or theft therein is guilty of a third degree felony.
>
> **B.** Any person who, without authorization, enters any vehicle, watercraft, aircraft or other structure, movable or immovable, with intent to commit any felony or theft therein is guilty of a fourth degree felony.

NMSA 1978 § 30-16-3.  There is no question that Mr. Perez was convicted of subsection A and not subsection B.[7]  *See* [Doc. 1] at 4; [Doc. 8] at 1; PSR at 8.

Comparing the generic definition with § 30-16-3(A) (Mr. Perez's statute of conviction), I find that the two are substantially similar.  The parties do not dispute that the burglary portion of the New Mexico statute and the generic definition are adequately coextensive.  Rather, they disagree about whether the definition of dwelling under the New Mexico statute is overbroad.  New Mexico defines "dwelling house" as "any structure, any part of which is customarily used as living quarters."  UJI 14-1631 NMRA.  Section 30-16-3(A) does not include any of the non-dwellings described in *Smith*, *Forsythe*, *Bennett*, or the dissent in *Armendariz-Perez*, such as shops, warehouses, businesses, or unattached storage sheds.  The New Mexico statute is more like Oklahoma's first degree burglary statute and Arizona's second degree burglary statute.  It is not overbroad compared with the generic definition of "burglary of a dwelling."

Mr. Perez disagrees.  He asserts that that "dwelling house" in subsection A is broader than "dwelling" in the generic definition.  [Doc. 1] at 6.  He cites to *New Mexico v. Lara*, 1978-NMCA-112, ¶¶ 4–5, 92 N.M. 274, 274–75, for support.  In *Lara*, the defendant was convicted under subsection A for "breaking into a garage that was attached to a residence, even

---

[7] Accordingly, the "modified categorical approach" may not be applied.  *See Mathis v. United States*, 136 S. Ct. 2243, 2253–54 (2016) (The modified categorical approach may be utilized only when language of the statute of conviction is disjunctive, thereby leaving it unclear which crime, and which elements, the defendant was convicted of.  "It is not to be repurposed as a technique for discovering whether a defendant's prior conviction, even though for a too-broad crime, rested on facts . . . that also could have satisfied the elements of a generic offense.").  If there were some question about whether Mr. Perez had been convicted under subsection A or subsection B, I would find that the statute is divisible into subsections A and B, which are disjunctive.  I would apply the modified categorical approach and look to the appropriate documents to find that Mr. Perez was convicted under subsection A and not subsection B.  *See* [Doc. 8-1] at 1 (Second Amended Criminal Information, listing the charge as "Burglary (Residential)"); [Doc. 8-3] at 1 (Judgment, Sentence and Commitment, describing the charge as "Aggravated Burglary (Residential)").

though 'there was no direct access to the interior of the house from the garage.'" [Doc. 1] at 6 (quoting *Lara*, 1978-NMCA-112, ¶¶ 4–5). In other words, the New Mexico statute "encompasses . . . burglary of any part of a dwelling, even if the locus of the burglary had 'no opening to' the occupied structure." [Doc. 1] at 6. Mr. Perez argues that the generic definition is too narrow to encompass the *Lara* burglary. *Id.* He argues that the generic definition requires that the locus of the burglary be accessible through the interior of the habitation. *Id.* The problem for Mr. Perez is that he cites no binding authority for his position. In fact, he cites no case in which a court—from any jurisdiction—has held that the generic definition of "burglary of a dwelling" does not encompass burglaries like the one in *Lara*.

Mr. Perez cites to a 1986 case from the Alabama Court of Criminal Appeals holding that a garage was not considered part of a dwelling for burglary purposes because the garage was its own, separate building, 20 feet away from the dwelling. *Foreman v. Alabama*, 546 So. 2d 977, 981 (Ala. Crim. App. 1986). Of course, the garage in *Lara* is distinguishable because it shared an interior wall with the rest of the dwelling house. 1978-NMCA-112, ¶¶ 3–6. The garage in *Lara* was literally under the same roof as the rest of the dwelling house. *See id.* Thus, the reasons for distinguishing the garage from the dwelling house in *Foreman* are simply not applicable to *Lara*.

Next, Mr. Perez cites to a 1933 case from the Court of Appeal of California, holding that an after-hours burglary of a tire store did not constitute first degree burglary because it was not burglary of either an "inhabited" building or a "dwelling house." *California v. Warwick*, 135 Cal. App. 476, 478 (Cal. App. 1st Dist. 1933). The court explained that the tire store was "part

of a larger building, the upper portion of which was occupied as a hotel, having an entrance on another street[.]  The store and the hotel were wholly disconnected so far as communication was concerned, and there is no claim made that they were operated under the same management."  *Id.*  I do not find *Warwick* persuasive.  The multi-use commercial building in *Warwick* is not the same as the apparently free-standing, single-family home in *Lara*.  Thus, the fact that there was no internal door connecting the hotel with the tire store in the multi-use commercial building in *Warwick* is not analogous to the lack of an internal door connecting the garage with the rest of the dwelling house in *Lara*.

Lastly, Mr. Perez cites to a 1990 case from the Supreme Court of Illinois.  There, the court looked to a state statutory definition of dwelling:  "a structure that is used by another as a residence or living quarters in which the owners or occupants actually reside."  *Illinois v. Thomas*, 137 Ill. 2d 500, 519 (Ill. 1990).  Based on that definition, the court held that "[a] garage, at least in [that] instance, whether attached to the various living units or not, cannot be deemed a residence or living quarters."  *Id.  Thomas* is unpersuasive.  The court did not indicate whether the garage at issue was internally accessible from its respective living unit.  Presumably, that detail was not mentioned because it did not matter.  The Illinois statute limited the dwelling to the location where the occupants "actually reside[d]."  *See id.  Thomas* is inapposite.

None of these cases define dwelling in a way that is inconsistent *Lara*.  Even if one of the cases did appear inconsistent with *Lara*, it would still be of little help to Mr. Perez because the cases do not evidence the intent of the Sentencing Commission.  *See Rivera-Oros*, 590 F.3d at 1129 (explaining that the generic definition of "burglary of a dwelling" is informed by the

16

intent of the Sentencing Commission's intent in utilizing the term).  The cases cited by Mr. Perez (*Foreman*, *Warwick*, and *Thomas*) all interpret language specific to a state statutory definition.  I understand that Mr. Perez cites to these cases to show the "contemporary understanding . . . that a structure is only part of a dwelling when it constitutes part of the residence through direct internal connection."  [Doc. 1] at 10.  It is a thoughtful argument.  Nevertheless, I am not persuaded by these cases that the generic definition of burglary of a dwelling does (or should) exclude the burglary described in *Lara*.

Mr. Perez does address the Sentencing Commission's intent in including the crime "burglary of a dwelling" as a "crime of violence.  [Doc. 1] at 10–11.  He explains that the Commission wanted to focus on crimes that necessarily posed an increased risk of physical and psychological injury.  *Id.*  Thus, it categorized "burglary of a dwelling" as a "crime of violence," but not other burglaries.  Burglary of a dwelling poses a much higher risk of confrontation with the resident and a substantial risk that force would be used, resulting in injuries.  *Id.* at 10 (citing *Rivera-Oros*, 590 F.3d at 1130).  So, he reasons, "the modern trend of excluding outbuildings from the definition of a dwelling is a recognition that such burglaries lack the inherent danger of truly residential entries."  *Id.* at 10–11.  I follow the logic.  However, the reasons for excluding unattached outbuildings from the definition of dwelling do not apply—or at least are less applicable—to the attached garage in *Lara*.  Besides, the New Mexico courts have made clear that outbuildings are not included in their definition of "dwelling."  *State v. Ross*, 1983-NMCA-065, 100 N.M. 48, 665 P.2d 310, 313 (N.M. Ct. App. 1983) (holding that a "detached and

non-contiguous garage did *not* constitute a part of the dwelling house proper" and was not a "dwelling" under New Mexico's residential burglary statute) (emphasis added).

Having carefully considered all of the authorities and arguments, I am not persuaded. Mr. Perez cites no authority that requires me to—or persuaded me that I should—find that the generic definition of dwelling necessarily must exclude a garage that is part of the structure in which the victim lives, even though the garage is not accessible from the interior of the home and is only accessible by first going out onto either the patio or driveway.

Finally, there is at least an indication that the Tenth Circuit Court of Appeals would disagree with Mr. Perez. The court thoroughly analyzed whether Arizona's residential burglary statute matched the generic definition of "burglary of a dwelling" in *Rivera-Oros*. 590 F.3d at 1133–34. The court held that the Arizona statute, indeed, qualified as a "crime of violence" under the enumerated clause. *Id.* This is particularly relevant here because, as the court noted in its opinion, the Arizona statute included in its definition of dwelling "a storage area under the same roof as the main house, but separated by a walkway." *Id.* (citing *Arizona v. Ekmanis*, 183 Ariz. 180, 901 P.2d 1210, 1211–13 (Ariz. Ct. App. 1995)). To be sure, this is dicta, and *Rivera-Oros* did not address Mr. Perez's argument head on. Although it does not control the outcome here, it is relevant to my analysis.

I find that the term "dwelling" in NMSA 1978 § 30-16-3(A) corresponds in substance to the generic definition of "dwelling" reflected in the enumerated offense of § 2L1.2 (i.e., burglary

of a dwelling).[8]  Nor is there a realistic probability that the New Mexico courts would interpret the term "dwelling" in a manner that would sever this correspondence in the future. New Mexico's residential burglary statute, NMSA 1978 § 30-16-3(A), qualifies as an enumerated "crime of violence" at § 4B1.2(a) because it is substantially similar to "burglary of a dwelling".  Accordingly, I find that Mr. Perez's sentenced was enhanced under the enumerated clause and not the residual clause.  The instant § 2255 motion, which challenges only the residual clause, should be denied.

<u>Conclusion</u>

**IT IS THEREFORE RECOMMENDED** that Defendant Carlos Perez's Second Petition to Correct His Illegal Sentence Pursuant to 28 U.S.C. § 2255 [CR Doc. 55; CV Doc. 1] be **DENIED** and that case No. 16-cv-0545 RB/SMV be **DISMISSED with prejudice**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.** *See* **D.N.M.LR-Civ. 10.1.  If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**

---

[8] The Honorable Carmen E. Garza, United States Magistrate Judge, has recently reached the same conclusion. *See United States v. Thyberg*, [Doc. 14] in 16-cv-0514 JAP/CG and [Doc. 43] in 10-cr-0196 JAP (D.N.M.).

19