IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                      No.     04-cr-1308 RB
                                                                                          16-cv-0545 RB/SMV

CARLOS PEREZ,

    Defendant.

**ORDER ADOPTING MAGISTRATE JUDGE'S
PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on the Magistrate Judge's Proposed Findings and Recommended Disposition [CR Doc. 66; CV Doc. 12] ("PF&RD") issued on October 12, 2016. On reference by the undersigned, [Doc. 2], the Honorable Stephan M. Vidmar, United States Magistrate Judge, recommended denying Defendant Carlos Perez's Second Petition to Correct His Illegal Sentence Pursuant to 28 U.S.C. § 2255 [CR Doc. 55; CV Doc. 1]. Defendant objected to the PF&RD on October 26, 2016. [CR Doc. 67; CV Doc. 13]. The United States neither objected to the PF&RD, nor responded to Defendant's objections. On de novo review of the portions of the PF&RD to which Defendant objects, the Court will overrule the objections, adopt the PF&RD, deny Defendant's Second Petition to Correct His Illegal Sentence Pursuant to 28 U.S.C. § 2255 [CR Doc. 55; CV Doc. 1], and dismiss case number 16-cv-0545 RB/SMV with prejudice.

**Background**

Mr. Perez was charged with six counts of possession and distribution of methamphetamine and marijuana and one count of being a felon in possession of a firearm. *See*

[CR Doc. 22] at 2. He entered into a plea agreement with the United States on November 17, 2004. *Id.* at 9. He agreed to plead guilty to six counts of the seven-count indictment. *Id.* at 2. In exchange, the government agreed to dismiss Count 7 and not to bring any additional charges. *Id.* at 7–8. Further, the government stipulated that he should receive a reduction of three levels for acceptance of responsibility, an enhancement of two levels for possessing a firearm, and that he be sentenced at the low end of the guideline range. *Id.* at 6.

Apparently, however, on receiving the Presentence Report ("PSR"), the parties were surprised to learn that Mr. Perez was classified as a career offender and, thus, was facing more time than the attorneys had anticipated. Transcript of Sentencing dated Jan. 4, 2006 [Doc. 12-1] at 2–4. It is unclear how much time the attorneys had contemplated, but it was obviously lower than the range described in the PSR, which was 262–327 months. *Id.*; PSR at 18. In order to "mitigate that a little bit," the prosecutor not only moved to dismiss Count 7 (as per the plea agreement), but she additionally moved to dismiss Count 4. [Doc. 12] at 2–3. She explained that she was moving to dismiss Count 4 (even though it was not part of the plea agreement) in order to reduce the guideline range. Dismissing Count 4 lowered Mr. Perez's total offense level from 34 to 31 and, consequently, lowered his guideline range from 262–327 months to 188–235 months. *Id.*; PSR at 18.

The Court agreed with the attorneys' plan. *See* Transcript of Sentencing dated Jan. 4, 2006, at 26–28. It allowed the prosecutor to dismiss both Counts 4 and 7. [CR Doc. 27]. It found that Mr. Perez's total offense level was 31 and his criminal history category was VI. Transcript of Sentencing dated Jan. 4, 2006, at 27. It found that the guideline imprisonment

range was 188−235 months. Ultimately, the Court sentenced Mr. Perez to 188 months. *Id.* at 27–28.

With permission from the Tenth Circuit Court of Appeals, [CR Doc. 54], Mr. Perez now brings this second motion under § 2255 to correct his sentence. The Court referred the motion to Judge Vidmar for analysis and recommendation. [Doc. 2].

Initially, Judge Vidmar suggested that the error alleged by Mr. Perez did not prejudice him. [Doc. 12] at 4–5. He found that Mr. Perez was sentenced with the guidelines range that he advocated, and thus, it appeared that any error was not prejudicial. *Id.* Nevertheless, relying on *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2008), Judge Vidmar presumed that Mr. Perez was prejudiced, and he proceeded to the merits, ultimately recommending that Mr. Perez's motion be denied. [Doc. 12] at 4–5.

<u>Motions under § 2255 and *Johnson v. United States*</u>

Pursuant to 28 U.S.C. § 2255(a), a "prisoner in custody" pursuant to a federal conviction may "move the court" "to vacate, set aside or correct the sentence" if it "was imposed in violation of the Constitution or laws of the United States."

In *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015), the Supreme Court held that the so-called residual clause of the definition of "violent felony" in the Armed Career Criminal Act ("ACCA") was unconstitutionally vague. The ACCA defined "violent felony" as follows:

> any crime punishable by imprisonment for a term exceeding one
> year . . . that —
> (i) has as an element the use, attempted use, or threatened use of
> physical force against the person of another; or

3

> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

18 U.S.C. § 924(e)(2)(B) (emphasis added). The closing words of this definition, italicized above, have come to be known as the "residual clause."

The Court explained that the residual clause left "grave uncertainty" about "deciding what kind of conduct the 'ordinary case' of a crime involves." *Johnson*, 135 S. Ct. at 2257. That is, the residual clause "denie[d] fair notice to defendants and invite[d] arbitrary enforcement by judges" because it "tie[d] the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Id.* Second, the residual clause of the ACCA's definition of violent felony left "uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id.* at 2558. By combining these two indeterminate inquiries, the Court held, "the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.* On that ground it held the residual clause void for vagueness. *Id.*

Soon thereafter, the Court determined that the ruling in *Johnson* was substantive (as opposed to procedural) and, therefore, had "retroactive effect in cases on collateral review." *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016). Accordingly, *Welch* opened the door for individuals sentenced under the residual clause of the ACCA's violent-felony definition to move to vacate their sentences as unconstitutional under § 2255.

Mr. Perez's motion, however, is different. He was not sentenced under the ACCA, nor does he claim that he was. Instead, he argues that he was sentenced under § 4B1.1 of the U.S. Sentencing Guidelines Manual ("Guidelines" or "Sentencing Guidelines"). This section is

4

known as the career offender guideline. Like the ACCA, the career offender guideline prescribes harsher sentences for individuals with prior convictions for "crimes of violence." Also, like the ACCA, Guidelines' definition for "crime of violence" includes a residual clause.

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that —
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

§ 4B1.2(a) (2004).[1] The closing words of this definition, italicized above, have come to be known as the "residual clause" of the career offender guideline's definition of "crime of violence."

Mr. Perez reasons that because the residual clause in the career offender guideline mirrors the residual clause in the ACCA, the Supreme Court's holding in *Johnson* (that the ACCA's residual clause is unconstitutionally vague) should apply equally to the residual clause in the career offender guideline. In other words, Mr. Perez asks the Court to extend *Johnson* beyond the ACCA to the career offender guideline.[2] Judge Vidmar found that there was some support for his position.

---

[1] Mr. Perez's briefing refers to the 2004 edition of the Guidelines. [Doc. 1] at 4. His PSR expressly applied the 2004 edition. PSR at 7, ¶ 13. The government does not argue that a different edition is relevant. *See* [Doc. 8]. Accordingly, the Court reviews the 2004 edition.

[2] Mr. Perez did not raise this issue on direct appeal. Generally, claims that were not raised on direct appeal are procedurally defaulted and cannot be raised in a § 2255 motion unless the defendant can show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed. *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994). However, the government did not raise procedural default as a defense, and Judge Vidmar declined to address it sua sponte as does the Court. *See Hines v. United States*, 971 F.2d 506, 509 (10th Cir. 1992) (holding that, in a § 2255 motion, the district court may raise procedural default sua sponte); *but see Gray v.*

The Tenth Circuit applied *Johnson* outside of the context of ACCA and invalidated the residual clause of the career offender guideline in *United States v. Madrid*, 805 F.3d 1204, 1210 (10th Cir. 2015). However, *Madrid* was not a collateral attack on a sentence; it was a direct appeal. This distinction matters because, in order to rely on *Madrid* for the instant motion under § 2255, Mr. Perez must show that the rule in *Madrid* is retroactive. There is no *Welch* corollary expressly holding that *Madrid* is or is not retroactive, and it is no surprise that the parties dispute whether *Madrid* should apply retroactively. *Compare* [Doc. 1] at 15,[3] *with* [Doc. 8] at 6–12.

These issues—whether *Johnson* should be extended to the career offender guideline, and if so, whether such ruling should apply retroactively—are currently before the Supreme Court in *Beckles v. United States* (S. Ct. No. 15-8544). Here, the United States moved to stay Mr. Perez's § 2255 motion pending the Court's ruling in *Beckles*. [Doc. 5]. Mr. Perez opposed the stay because he expects to be released before *Beckles* is decided. [Doc. 6] at 3. He contended that a stay would prejudice him because, if this Court is persuaded by his motion and resentences him, he would likely be eligible for immediate release. *See id.* The United States did not dispute that a stay would prejudice Mr. Perez. [Doc. 7]. Judge Vidmar denied the motion to stay for two reasons. First, he found that a stay would prejudice Mr. Perez. Second, he found that regardless of how the Supreme Court rules in *Beckles*, Mr. Perez was not entitled to resentencing because he was not sentenced under the residual clause of the career offender guideline; he was sentenced under the enumerated clause. [Doc. 11] (citing § 4B1.2(a)).

---

*Netherland*, 518 U.S. 152, 165−66 (1996) (commenting that, in a § 2254 petition, procedural default is waived if not raised by the government).
[3] Unless specifically noted otherwise, citations to document numbers refer to the docket in the civil case, which is case number 16-cv-0545 RB/SMV.

Judge Vidmar found that Mr. Perez's underlying conviction for violating NMSA 1978 § 30-16-3(A) qualified as a crime of violence under the "enumerated clause" (and not the "residual clause") of Guidelines § 4B1.2(a) (2004). Thus, Judge Vidmar did not need to decide whether *Madrid*—which extended Johnson to the residual clause of the career offender guideline—should be applied retroactively to allow for relief under § 2255; if *Madrid* were retroactive, Mr. Perez would still not be entitled to re-sentencing.

<u>Judge Vidmar found that Mr. Perez's conviction for
New Mexico residential burglary qualified as an enumerated "crime of violence."</u>

Mr. Perez was deemed to be a career offender based on two prior convictions in New Mexico: one in 2000 for residential burglary, NMSA 1978 § 30-16-3(A), and one in 2002 for distribution of a controlled substance, NMSA 1978 § 30-31-22. PSR at 8; [Doc. 1] at 4. There is no dispute that the controlled substance conviction is a qualifying conviction under the career offender guideline. [Doc. 12] at 9 (citing [Doc. 1] at 4). The dispute here concerns the residential burglary conviction. *Id.*

Mr. Perez argues that his residential burglary conviction could have qualified as a crime of violence (and, thus, counted toward his career offender designation) *only* under the residual clause. Further, he argues that this Court should apply *Madrid* retroactively and resentence him. The United States argues that the residential burglary conviction qualified as a crime of violence under the so-called enumerated clause ("The term 'crime of violence' means any offense . . . that . . . (2) is burglary of a dwelling, arson, or extortion, [or] involves use of explosives[.]"

7

§ 4B1.2(a)).[4] Therefore, the United States argues that the rationale in *Johnson* and *Madrid* does not apply to this case. In other words, irrespective of *Johnson* and *Madrid* and the ultimate outcome in *Beckles*, the United States argues that Mr. Perez should not be resentenced because he was not sentenced under the residual clause in the first place. Judge Vidmar agreed with the United States.

He found that Mr. Perez's conviction under § 30-16-3(A) was substantially similar to the generic definition of "burglary of a dwelling." Therefore, he concluded that Mr. Perez's conviction under § 30-16-3(A) qualified as a crime of violence under the "enumerated clause" (and not the "residual clause") of Guidelines § 4B1.2(a). Judge Vidmar determined that Mr. Perez was not entitled to resentencing.

The definition and scope of the offenses enumerated in the career offender guideline's definition of "crime of violence" are questions of federal law. *See United States v. Rivera-Oros*, 590 F.3d 1123, 1126 (10th Cir. 2009) (analyzing the "crime of violence" definition in a guideline applicable to unlawfully entering or remaining in the United States). To define the generic crime of "burglary of a dwelling" as listed in the Guidelines, courts look for indicia of the Sentencing Commission's intent in listing "burglary of a dwelling" as an enumerated "crime of violence." *Id.* at 1129. Evidence of the Commission's intent may be found, for example, in previous judicial decisions interpreting the Guidelines, the Model Penal Code, or even Black's Law Dictionary. *See id.* at 1131–32.

---

[4] Neither party argues that the residential burglary conviction falls under the so-called "elements" (or "force") clause (to wit: "The term 'crime of violence' means any offense . . . that—(1) has as an element the use, attempted use, or threatened use of physical force against the person of another[.]" § 4B1.2(a)). *See* [Doc. 1] at 4–5; [Doc. 8] at 13−21.

8

The label that a state attaches to a crime under its laws does not determine whether it is a Guidelines enumerated offense. *Id.* (citing *United States v. Servin-Acosta*, 534 F.3d 1362, 1366 (10th Cir. 2008) ("[W]e have rejected the notion that whether a state conviction was for an enumerated but undefined crime 'depends upon how the crime is characterized under state law.'"). Instead, the enumerated offenses of § 4B1.2(a) are defined by their "generic, contemporary meaning." *Id.* at 1126 (citing *Taylor v. United States*, 495 U.S. 575, 598 (1990)). For purposes of the instant motion, the parties agree that the "generic, contemporary meaning" (or the "generic definition") of the guideline offense of "burglary of a dwelling" is burglary of any "enclosed space that is used or intended for use as a human habitation." [Doc. 1] at 5 (citing *Rivera-Oros*, 590 F.3d at 1132[5]); [Doc. 8] at 14.

Mr. Perez was convicted of burglary under New Mexico's residential burglary statute. Of course, the fact that attorneys often refer to the statute as "residential burglary" is wholly irrelevant to the analysis at hand. Rather, in determining whether a previous conviction satisfies the generic meaning of the offense, courts apply "a formal categorical approach, looking only to the statutory definitions of the prior offense[], and not to the particular facts underlying th[e] conviction[]." *Rivera-Oros*, 590 F.3d at 1127 (citing *Taylor*, 495 U.S. at 600). "A state statute does not need to match the generic definition verbatim. The Guideline enhancement applies so long as the statute 'corresponds in substance to the generic meaning.'" *Id.* at 1133 (quoting *Taylor*, 495 U.S. at 599). "[T]o find that a state statute creates a crime outside the generic

---

[5] *Rivera-Oros* actually dealt with the generic offense of burglary of a dwelling that is listed in § 2L1.2 of the guidelines. 590 F.3d at 1127. That offense is the same as the offense described in the career offender guidelines. *See United States v. Ramirez*, 708 F.3d 295, 302 (1st Cir. 2013) (treating cases defining "burglary of a dwelling" under both § 2L1.2 and § 4B1.2 interchangeably).

definition . . . requires more than the application of legal imagination . . . . It requires a *realistic probability*, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Id.* (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

The parties in this case agree that the generic definition of the guideline offense of burglary of a dwelling is found in *Rivera-Oros*:[6] the burglary of any "enclosed space that is used or intended for use as a human habitation." [Doc. 1] at 5 (citing *Rivera-Oros*, 590 F.3d at 1132); [Doc. 8] at 14). Mr. Perez's statute of conviction reads:

> **Burglary.**
>
> Burglary consists of the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, with the intent to commit any felony or theft therein.
>
> **A.** Any person who, without authorization, enters a dwelling house with intent to commit any felony or theft therein is guilty of a third degree felony.
>
> **B.** Any person who, without authorization, enters any vehicle, watercraft, aircraft or other structure, movable or immovable, with intent to commit any felony or theft therein is guilty of a fourth degree felony.

NMSA 1978 § 30-16-3. There is no question that Mr. Perez was convicted of subsection A and not subsection B.[7] [Doc. 12] at 13–14 (citing [Doc. 1] at 4; [Doc. 8] at 1; PSR at 8).

---

[6] The Court addresses Mr. Perez's objection to this definition *infra*. *See* [Doc. 13] at 2.
[7] Accordingly, Judge Vidmar found that the "modified categorical approach" could not be applied. *See Mathis v. United States*, 136 S. Ct. 2243, 2253–54 (2016) (The modified categorical approach may be utilized only when language of the statute of conviction is disjunctive, thereby leaving it unclear which crime, and which elements, the defendant was convicted of. "It is not to be repurposed as a technique for discovering whether a defendant's prior conviction, even though for a too-broad crime, rested on facts . . . that also could have satisfied the elements of a generic offense."). If there were some question about whether Mr. Perez had been convicted under subsection A or

Judge Vidmar compared the generic definition with § 30-16-3(A) (Mr. Perez's statute of conviction) and found that the two were substantially similar. [Doc. 12] at 14. The parties do not dispute that the burglary portion of the New Mexico statute and the generic definition are adequately coextensive. Rather, they disagree about whether the definition of dwelling under the New Mexico statute is overbroad. New Mexico defines "dwelling house" as "any structure, any part of which is customarily used as living quarters." UJI 14-1631 NMRA.

To aid Judge Vidmar in his determination, he looked at five cases in which the Tenth Circuit had analyzed whether certain state burglary statutes were substantially similar to the generic definition of burglary. [Doc. 12] at 11–14 (citing *United States v. Smith*, 10 F.3d 724, 733 (10th Cir. 1993) (California statutory definition included non-dwellings such as "shop[s], warehouse[s], store[s], mill[s], [and] barn[s]."); *United States v. Forsythe*, 437 F.3d 960 (10th Cir. 2005) (New Jersey burglary statute applied to "any place adapted for overnight accommodation of persons, *or* for carrying on business therein"); *United States v. Bennett*, 108 F.3d 1315, 1317 (10th Cir. 1997) (holding that Oklahoma's second degree burglary statute was "obviously overbroad" because it included any "structure or erection, in which any property is kept," but holding that Oklahoma's first degree burglary statute was not overbroad where it required "break[ing] into and enter[ing] the dwelling house of another, in which there is at the time some human being"); *Armendariz-Perez*, 543 F. App'x 876, 884 (10th Cir 2013) (Phillips, J., dissenting) (opining that the Texas statute was overbroad because it included structures that

---

subsection B, Judge Vidmar indicated that he would find that the statute was divisible into subsections A and B, which are disjunctive. He would apply the modified categorical approach and look to the appropriate documents to find that Mr. Perez was convicted under subsection A and not subsection B. [Doc. 12] at 14 n.7 (citing [Doc. 8-1] at 1 (Second Amended Criminal Information, listing the charge as "Burglary (Residential)"); [Doc. 8-3] at 1 (Judgment, Sentence and Commitment, describing the charge as "Aggravated Burglary (Residential)")).

were not used or intended for use as a human habitation, such as sheds, unattached garages, and other appurtenant structures, and because Texas's definition of "habitation" was not limited to "enclosed" spaces); *Rivera-Oros*, 590 F.3d at 1135 (holding that Arizona's burglary statute was not overbroad even though it covered movable structures such as boats and tents)).

Judge Vidmar noted that § 30-16-3(A) did not include any of the non-dwellings described in *Smith*, *Forsythe*, *Bennett*, or the dissent in *Armendariz-Perez*, such as shops, warehouses, businesses, or unattached storage sheds. He found that the New Mexico statute was more like Oklahoma's first degree burglary statute and Arizona's second degree burglary statute, which were substantially similar to the generic definition. [Doc. 12] at 14. He found that § 30-16-3(A) was not overbroad compared with the generic definition of "burglary of a dwelling." *Id.*

Judge Vidmar then carefully analyzed Mr. Perez's authorities and arguments to the contrary, all of which were rooted in his core argument: that "dwelling house" in subsection A was broader than "dwelling" in the generic definition. *Id.* at 14–19. Mr. Perez cited to *New Mexico v. Lara*, 1978-NMCA-112, ¶¶ 4–5, 92 N.M. 274, 274–75, for support. In *Lara*, the defendant was convicted under subsection A for "breaking into a garage that was attached to a residence, even though 'there was no direct access to the interior of the house from the garage.'" [Doc. 1] at 6 (quoting *Lara*, 1978-NMCA-112, ¶¶ 4–5). In other words, the New Mexico statute "encompasses . . . burglary of any part of a dwelling, even if the locus of the burglary had 'no opening to' the occupied structure." [Doc. 1] at 6. Mr. Perez argues—and this is the heart of his position—that the generic definition is too narrow to encompass the *Lara* burglary. *Id.* He

12

argues that the generic definition requires that the locus of the burglary be accessible through the interior of the habitation. *Id.*

Judge Vidmar rejected Mr. Perez's interpretation of the generic definition of "dwelling" (i.e., that it includes only those portions of a residence connected by a "direct internal connection"). [Doc. 12] at 14–19. Judge Vidmar noted that Mr. Perez had cited no binding authority for his interpretation and, in fact, had cited no authority from any jurisdiction holding that the generic definition of burglary of a dwelling did not encompass burglaries like the one in *Lara*. *Id.* at 15.

Judge Vidmar was not persuaded by Mr. Perez's authorities that the "contemporary understanding" of dwelling required "direct internal connection" to the rest of the residence. *Id.* at 15–17 (analyzing *Foreman v. Alabama*, 546 So. 2d 977, 981 (Ala. Crim. App. 1986) (holding that a garage was not part of a dwelling for burglary purposes because the garage was its own, separate building, 20 feet away from the dwelling); *California v. Warwick*, 135 Cal. App. 476, 478 (Cal. App. 1st Dist. 1933) (holding that burglary of a tire store, which shared space in a commercial building with a hotel, was not burglary of an "inhabited" building or a "dwelling house" because the tire store and the hotel "were wholly disconnected so far as communication was concerned, and there is no claim made that they were operated under the same management"); and *Illinois v. Thomas*, 137 Ill. 2d 500, 519 (Ill. 1990) (holding that burglary of a garage could not constitute burglary of a dwelling because Illinois law limited dwellings to the space where the occupants "actually reside," and therefore, "[a] garage, at least in [that] instance, whether attached to the various living units or not, cannot be deemed a residence or living

quarters.")). Judge Vidmar explained that none of the cases defined dwelling in a way that was inconsistent with *Lara*. *Id.* at 15–17. Therefore, Mr. Perez had failed to persuade him that the "contemporary understanding" of dwelling excluded—or should exclude—spaces that have no "direct internal connection" to the rest of the residence. *Id.* at 17 (quoting [Doc. 1] at 10).

Moreover, Judge Vidmar explained that the cases cited by Mr. Perez did nothing to show that the Sentencing Commission intended to exclude burglaries like the one in *Lara*. *Id.* at 16–17 (citing *Rivera-Oros*, 590 F.3d at 1129 (explaining that the generic definition of "burglary of a dwelling" is informed by the Sentencing Commission's intent in utilizing the term). Rather, as Mr. Perez and Judge Vidmar both discussed, the Sentencing Commission wanted to focus on crimes that necessarily posed an increased risk of physical and psychological injury. *Id.* Burglary of a dwelling poses a much higher risk of confrontation with the resident and a substantial risk that force would be used, resulting in injuries. *Id.*; *see Rivera-Oros*, 590 F.3d at 1130. So it makes sense that the Sentencing Commission would categorize "burglary of a dwelling" as a "crime of violence," but not other burglaries. *Id.*

Based on this distinction, Mr. Perez argued that "the modern trend of excluding outbuildings from the definition of a dwelling is a recognition that such burglaries lack the inherent danger of truly residential entries." [Doc. 1] at 10–11. The idea is that the farther away from the residence the burglary occurs, the less likely a risk of confrontation with the resident (and risk of force being used and resulting injuries) becomes. *See id.* But the burglary in *Lara* occurred under the same roof as the rest of the residence, in a garage that shared an interior wall with the residence. 1978-NMCA-112, ¶¶ 4–5. Judge Vidmar, therefore, found that the reasons

for excluding unattached outbuildings from the definition of dwelling do not apply—or at least are less applicable—to the attached garage in *Lara*. [Doc. 12] at 17–18.

Besides, as Judge Vidmar pointed out, the New Mexico courts have made clear that outbuildings are not included in their definition of "dwelling." *Id.* (citing *State v. Ross*, 1983-NMCA-065, 100 N.M. 48, 665 P.2d 310, 313 (N.M. Ct. App. 1983) (holding that a "detached and non-contiguous garage did *not* constitute a part of the dwelling house proper" and was not a "dwelling" under New Mexico's residential burglary statute) (emphasis added)).

Lastly, Judge Vidmar explained that the Tenth Circuit Court of Appeals had indicated—albeit in dicta—that it would disagree with Mr. Perez's generic definition of dwelling. *Id.* at 18 (citing *Rivera-Oros*, 590 F.3d at 1133–34). In *Rivera-Oros*, the court ultimately held that Arizona's residential burglary statute qualified as a "crime of violence" under the enumerated clause. 590 F.3d at 1133–34. In so holding, the court expressly recognized that the Arizona statute included in its definition of dwelling "a storage area under the same roof as the main house, but separated by a walkway." *Id.* (citing *Arizona v. Ekmanis*, 183 Ariz. 180, 901 P.2d 1210, 1211–13 (Ariz. Ct. App. 1995)).

Ultimately, Judge Vidmar determined:

> that the term "dwelling" in NMSA 1978 § 30-16-3(A) corresponds in substance to the generic definition of "dwelling" reflected in the enumerated offense of § 2L1.2 (i.e., burglary of a dwelling). Nor is there a realistic probability that the New Mexico courts would interpret the term "dwelling" in a manner that would sever this correspondence in the future. New Mexico's residential burglary statute, NMSA 1978 § 30-16-3(A), qualifies as an enumerated "crime of violence" at § 4B1.2(a) because it is substantially similar to "burglary of a dwelling". Accordingly, [he found] that Mr. Perez's sentence[] was enhanced under the enumerated clause

15

and not the residual clause. The instant § 2255 motion, which
challenges only the residual clause, should be denied.

[Doc. 12] at 18–19.

## Standard of Review for Objections
## to Magistrate Judge's PF&RD

A district judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). "[O]bjections to the magistrate judge's report must be both timely and specific to preserve an issue for de novo review by the district court[.]" *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). To preserve an issue, a party's objections to a PF&RD must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* Moreover, "theories raised for the first time in objections to the magistrate judge's report are deemed waived." *United States v. Garfinkle*, 261 F.3d 1030, 1030−31 (10th Cir. 2001).

## Analysis

Mr. Perez objects to the PF&RD. [Doc. 13]. Several of the objections are nothing more than challenges to Judge Vidmar's ultimate conclusions—with no explanation or argument. *Id.* at 1, 3. For example, in paragraphs 1, 2, and 6, Mr. Perez objects to Judge Vidmar's recommendation that the Petition be dismissed, that his underlying conviction qualifies as an enumerated crime of violence, and that he is not entitled to relief. *Id.* at 1, 3. These objections are too vague to be meaningful. *See Lockert v. Faulkner*, 843 F.2d 1015, 1019 ("Just as a

complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review."). They are overruled.

The Court addresses the substantive objections in order of analytical convenience. *See* [Doc. 13] at 2–3. First, in paragraph 3, Mr. Perez objects to Judge Vidmar's conclusion that it was unnecessary to determine whether the residual clause of the career offender guideline was unconstitutional. Mr. Perez correctly points out that the Tenth Circuit has already held it unconstitutional. *Id.* at 1–2 (citing *United States v. Madrid*, 805 F.3d 1204, 1210 (10th Cir. 2015)). The Court, however, fails to see how the distinction makes any difference in this case.

Judge Vidmar carefully—and correctly—described the current state of the law. [Doc. 12] at 5–8. He acknowledged that the *Madrid* court had held unconstitutionally vague the residual clause of the Guidelines' definition of crime of violence. [Doc. 12] at 7–8. The part that matters, though—the part that Mr. Perez ignores in his objection—is that *Madrid* is not retroactive, and retroactivity is a *sine qua non* of relief under § 2255. *See Welch*, 136 S. Ct. at 1264. True, it would have been more accurate to have said "[Mr. Perez's] argument that *Madrid*—which extended *Johnson v. United States* to hold the residual clause in the career offender guideline unconstitutionally vague—should be applied retroactively need not be decided." Mr. Perez's point is taken, but it is inconsequential and, thus, overruled.

Next, in paragraph 4, Mr. Perez objects to the Judge Vidmar's "conclusion that the parties agree that the generic, contemporary meaning (or the generic definition) of the guideline offense of burglary of a dwelling is burglary of any enclosed space that is used or intended for

17

use as a human habitation as stated in [*Rivera-Oros*, 590 F.3d at 1132]." [Doc. 13] at 2 (internal quotation marks omitted). The objection is overruled.

Not only did the parties agree on the generic definition, [Doc. 1] at 5, [Doc. 8] at 4, but Judge Vidmar exhaustively evaluated all of Mr. Perez's arguments that the definition should be interpreted as excluding the burglary in *Lara*. *See, e.g.*, [Doc. 12] at 18 ("Mr. Perez cites no authority that requires me to—or persuaded me that I should—find that the generic definition of dwelling necessarily must exclude a garage that is part of the structure in which the victim lives, even though the garage is not accessible from the interior of the home and is only accessible by first going out onto either the patio or driveway."). To the extent that the objection implies that Judge Vidmar did not address Mr. Perez's argument regarding the scope of the word "dwelling" in the generic definition, the objection is completely baseless. The PF&RD evaluates that very position at length. *See* [Doc. 12] at 14–19.

Similarly, the Court overrules the objection in paragraph 5, which asserts that Judge Vidmar "does not acknowledge that, in New Mexico, while residential burglary must involve the entry of any 'dwelling house,' this takes a unique meaning [because it can include] areas that are not internally connected to[ ]the residential space." [Doc. 13] at 2–3 (citing § 30-16-3(A); *Lara,*1978-NMCA-112, ¶¶ 4–5). Judge Vidmar expressly discussed *Lara* and thoroughly analyzed Mr. Perez's arguments that the definition of dwelling in *Lara* was broader than the generic definition. The Court understands that Mr. Perez disagrees with Judge Vidmar's conclusions about those arguments. However, the objection that Judge Vidmar somehow failed to "acknowledge" *Lara* or the relevant arguments is groundless.

Finally, on de novo review, the Court concludes that the term "dwelling" in NMSA 1978 § 30-16-3(A) corresponds in substance to the generic definition of "dwelling" reflected in the enumerated offense of § 2L1.2 (i.e., burglary of a dwelling). There is no realistic probability that the New Mexico courts would interpret the term "dwelling" in a manner that would sever this correspondence in the future. New Mexico's residential burglary statute, NMSA 1978 § 30-16-3(A), qualifies as an enumerated "crime of violence" at § 4B1.2(a) because it is substantially similar to "burglary of a dwelling." Accordingly, Mr. Perez's sentence was enhanced under the enumerated clause and not the residual clause. His motion under § 2255, which challenges only the residual clause, will be denied.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Mr. Perez's Objections to the Magistrate Judge's Proposed Findings and Recommended Disposition [CR Doc. 67; CV Doc. 13] are **OVERRULED**.

**IT IS FURTHER ORDERED** that the Magistrate Judge's Proposed Findings and Recommended Disposition [CR Doc. 66; CV Doc. 12] are **ADOPTED**.

**IT IS FURTHER ORDERED** that Defendant Carlos Perez's Second Petition to Correct His Illegal Sentence Pursuant to 28 U.S.C. § 2255 [CR Doc. 55; CV Doc. 1] is **DENIED**. Case number 16-cv-0545 RB/SMV is **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

_____
**ROBERT C. BRACK**
**United States District Judge**